

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GERALD C. MANN**
**ATTORNEY GENERAL**

Honorable L. A. Woods
State Superintendent of Public Instruction
Austin, Texas

Opinion No. O-2134
(1) Exemption of described property
of two religious encampment associa-
tions from Kerrville Independent
School District taxes, under Article
7150, Section 2a, Vernon's Annotated
Civil Statutes.
(2) Liability of abstract books,
cards, and other property of abstract
plant for such taxes.

Attention: Mr. T. M. Trimble

Dear Sir:

We are in receipt of your letter of March 26, 1940,
wherein you refer us to attached letter to you by Mr. A. P.
Allison, Attorney at Law, Kerrville Independent School Dis-
trict, requesting you to submit to this Department the two
questions above stated.

With reference to the first question, that is, the
claimed exemption of certain described properties of two re-
ligious encampment associations from ad valorem taxes levied
by Kerrville Independent School District, we are referred to
attached letters from these two associations, namely, West-
minster Presbyterian Encampment and Methodist Kerrville Assem-
bly, supplementing the factual statement contained in the
letter from Mr. A. P. Allison to you.

Although the facts attending the tax exemption claim
of the two named encampment associations vary in some particu-
lars and therefore will be separately stated, principles of
law common to both make it possible to answer your first ques-
tion in a single discussion. The facts and conditions upon

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable L. A. Woods, Page 2

which the tax exemption claims of the Westminster Presbyterian Encampment is based is quoted from its letter as follows:

"The purpose of the Westminster School and Encampment is for child welfare and training; religious, recreative study, and teaching for ministers, Sunday School workers, and Young People workers.

"This organization operates at a loss; the cost of the programs, training, and maintenance being more than the operating prices charged. These losses are made up by contributions from the Presbyterian Churches of Texas and other interested persons.

"The next group of statement should be amplified thusly:

A. Manager's residence and several cottages used for caretakers and workers.

B. We do not operate a cafeteria, but a dining hall which is open only during the conference season.

C. There are several classrooms in addition to the tabernacle.

D. During the summer when there are no conferences several of our cottages are available for renting to tourists who come here without solicitation when they are unable to find vacancies elsewhere in Kerrville. During the Conferences these cottages are of course rented or furnished to the persons who attend same. During the Fall, Winter, and Spring season a few of our cottages, 6 or 8 are available for renters who come here without solicitation usually after they have been unable to find vacancies elsewhere in Kerrville. Most of the cottages belonging to the Westminster School and Encampment are only skeleton frame buildings, suitable for summer use and are rented on the average of 6 weeks in the year.

Honorable L. A. Woods, Page 3

E. We have several acres of land which is for lease--never sold--to persons who wish to build cottages for themselves. The Encampment has leased lots to about 50 individuals who have erected better type cottages, and on all cottages so owned by individuals, are paid State and County, City, and School Taxes. More than half of our acreage is not for lease, but is set aside permanently for parks, playgrounds, flowerbeds, and roadways.

"The profits from B. D. E., if any, are used by the Encampment officials to help defray part of the cost of various religious programs and training schools, the child welfare and training, and maintenance of cottages, buildings, and grounds."

The letter of the Methodist Kerrville Assembly, hereinabove adverted to, states facts and circumstances under which its claim for tax exemption is predicated, as follows:

"We have a campus comprising about 20 acres. On this campus we have the manager's residence, The Dining Hall, The Club Room, Recreation tabernacle, Chapel, Seven Class rooms, one fourteen-room Faculty Dormitory, Eleven Boys Cabins; besides these buildings there are the connecting roads and paths, three tennis courts, base ball ground, Bad-minton court, Volley Ball court, Croquet Court, Shuffle-Board Courts and Childrens playground. Besides this an out-door Areana for Stunts and then a mountain top for sunrise and Vesper services.

"Besides this we have only two cottages which are the property of the Assembly and for the greater part of the year these are occupied by laborers employed by us. On several occasions these have been rented to tourists when not so occupied.

"We have unimproved lots not yet sold on which we pay tax. Lots sold unimproved and improved are not our property and unless neglected tax on these is paid by the owners.

Honorable L. A. Woods, Page 4

"The Methodist Kerrville Assembly, is incorporated according to the laws of this state, under the incorporate name, West Texas Encampment Association, as a non-profit sharing corporation, and is owned and operated by the Southwest Texas Conference of the Methodist Church. At this time the conference annually has to supplement the income to cover the improvements and running expenses. Last year $1500.00 was set aside for this purpose. The money derived from the sale of lots is immediately used to make repairs or erect new structures. Aside from this our property is still encumbered with an indebtedness, which is hoped might be cancelled eventually by the lots still for sale."

It may be additionally stated that these associations, through their by-laws, declare their reasons for existence to be the promotion of religious education, physical health, recreation, etc.

In order to narrow the issues presented for our determination, it should be stated that the Kerrville Independent School District is not seeking to levy and collect its taxes upon that portion of the described property used exclusively by these two religious encampment associations for their declared purposes, such as manager's residence, cafeteria or dining hall, tabernacle, chapel, club room, class rooms, etc., because such properties are admittedly exempted. It appears by the letter of the School District's attorney that the only portion of the encampment properties of these two religious associations sought to be made subject to the tax of the school district is (1) the acreage or unimproved lots held for sale or lease to persons and for purposes wholly unconnected with the associations, and (2) certain houses, cabins, or cottages, rented to and occupied by persons attending the encampment or meetings of the associations, and, during other months of the year, rented to any and all persons applying to rent same.

In connection herewith, it appears without dispute that the profit or income, if any, derived from the renting of the cottages and cabins and the sale or lease of the acreage, is turned over to the Treasurer of the respective encampment associations to defray maintenance and operating expenses of the association, to make necessary repairs and erect new structures, and to pay off existing lien indebtedness on the encampment

Honorable L. A. Woods, Page 5

properties. Each of the encampment associations contend that inasmuch as these proceeds go to the maintenance and upkeep of a non-profit organization, the statutory exemption hereinafter discussed becomes available. On the other hand, the attorney for the Kerrville Independent School District contends that the specific property is taxable despite these admitted facts.

Article 7150, as amended, Vernon's Annotated Civil Statutes, exempts from taxation, generally, certain specified kinds and classes of property. Section 2a, added by an amendment of the Forty-fifth Legislature, 1937, apparently to cover cases identical to the instant one, provides as follows:

"2a. Religious, educational and physical development associations.--That all property owned or used exclusively and reasonably necessary, in conducting any association engaged in the joint and threefold religious, educational and physical development of boys and girls, young men and young women, operating under a State or National Organization of like character, and not leased or otherwise used with a view to profit other than for the purpose of maintaining the buildings and Association, and all endowment funds of the above mentioned religious institutions, not used with a view to profit but for the purpose of maintaining the Association and buildings in doing religious work and for the educational or physical development of boys and girls, young men and young women, shall be exempt from taxation; provided that land property received by said institutions in payment and satisfaction of endowment fund loans or investments shall be exempt for two years only after foreclosure purchase of said land, and no longer."

We think it may be stated, from the facts before us, that the two religious associations in question meet the statutory requirement of being associations "engaged in the joint and threefold religious, educational and physical development of boys and girls, young men and young women, operating under a State or National Organization of like character". The crux of this opinion is whether or not the particular property in controversy, i.e. cottages and cabins and other buildings occupied by persons and for purposes foreign to the associations, and unimproved acreage for sale or lease, is "used exclusively and reasonably necessary" for conducting the encampments, within

Honorable L. A. Woods, Page 6


the meaning and contemplation of the above quoted exemption, construed as it must be, in connection with the limitation upon legislative exemption from taxation embodied in Article 8, Section 2, Constitution of Texas, the pertinent portion of which reads as follows:

> "But the Legislature may, by general laws, exempt from taxation . . . and property used exclusively and reasonably necessary in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women operating under a State or National Organization of like character".

In determining whether the property in question is "used exclusively and reasonably necessary in conducting" these two encampment associations, we must necessarily determine whether or not the additional condition of the exemption statute that property, to be exempt, be "not leased or otherwise used with a view to profit other than for the purpose of maintaining the buildings and Association" may constitutionally enlarge the Constitutional limitation, so as to confer an exemption status upon this particular property by virtue of the fact that "although not exclusively used for encampment purposes, the income therefrom goes for maintenance of the association rather than for profit."

We think that under Article 8, Section 2, Constitution of Texas, and the decisions concerning same, the "exclusive use" of this property for conducting the encampments each year is wholly inconsistent and at war with the lease or renting of the cottages and cabins or the lease or sale of the acreage to persons not connected with the encampment even though the rents and income from such leasing and renting inure to the advancement and benefit of the association purposes. And if Section 2a, Article 7150, Vernon's Annotated Civil Statutes, has the purpose and effect here of exempting from taxation all properties, the income from which goes to the support and maintenance or religious, educational and physical development associations, although such property is not "used exclusively and reasonably necessary" to the proper conduct of such associations, then we must say that such portion thereof is clearly unconstitutional, as being clearly in excess of the limitations upon tax exemptions embodied in Article 8, Section 22, Constitution of Texas, hereinabove quoted.

nnorable L. A. Woods, Page 7

Article 8, Section 2, Constitution of Texas, does not
of itself grant any exemptions from taxation, but merely operates
to authorize the Legislature to do so within the limits defined.
Therefore, so far as any statute exceeds this constitutional
grant of legislative power, it is null and void by express declaration of such constitutional provision that "all laws exempting
property from taxation other than the property above mentioned
shall be null and void". 40 Texas Jurisprudence, p. 108, and
cases cited.

The accepted rule for the construction of tax exemption
provisions of the Constitution and statutes, is stated at 40 Tex.
Jurisprudence, p. 109, to be that "when an exemption is found to
exist it shall not be enlarged by construction. On the contrary,
it ought to receive a strict construction; for the reasonable presumption is that the state has granted in express terms all it
intended to grant at all, and that unless the privilege is limited
to the very terms of the statute, the favor would be extended beyond what was meant."

Although we have found no decisions of our courts construing the particular portion of Article 8, Section 2, Constitution of Texas, involved in the instant case, and allowing the
Legislature to exempt "property used exclusively and reasonably
necessary in conducting any association engaged in promoting the
religious, educational and physical development", etc., we have
found both early and recent decisions construing analagous provisions of Article 8, Section 2, Constitution of Texas, namely,
the provision empowering the Legislature to exempt "all buildings
used exclusively and owned by persons or associations of persons
for school purposes, etc." and "institutions of purely public
charity".

In Morris v. Lone Star Chapter, 68 Tex. 698, 703, 5
S. W. 519, the Supreme Court, in an opinion by Judge Gaines,
held that the provision in Const. Tex. Art. 8, § 2, that the
legislature may exempt from taxation, among others, the buildings
of institutions of purely public charity, means such buildings
only as are used exclusively and owned by such institutions.
Hence a hall owned by a chapter of Royal Arch Masons, certain
portions of which were rented to persons and for purposes unconnected with the objects of the society, and the proceeds used
by the society in furtherance of its charitable objects, was not
a building used exclusively by it, and was subject to taxation.

Honorable L. A. Woods, Page 8

The same doctrine was announced by the Supreme Court in City of Houston v. Scottish Rite Benev. Ass'n., 111 Tex. 191, 230 S. W. 978, 979, 980. The agreed statement of facts showed that the Association dispensed charity among its other activities, but that this property was not exempt from taxation. Speaking through Judge Greenwood, the court said: "Such meaning is that the Legislature may, by general laws, exempt from taxation 'all buildings used exclusively and owned by persons or associations of persons for school purposes,' and 'all buildings used exclusively and owned by institutions of purely public charity'. So no building comes within the exemption authorized by the Constitution to 'Institutions of purely public charity' unless it is both owned and used exclusively by such an institution . . . But the question remains whether the property was owned and used exclusively by an institution of purely public charity. It does not satisfy the constitutional requirement that the use by others was permitted by the owner to obtain revenues to be devoted entirely to the owner's work of purely public charit . Morris v. Masons, 68 Tex. (698) 703, 5 S. W. 519. Nor is the requirement satisfied by the fact that those sharing the use pay no rent. Red v. Johnson, 53 Tex. (284) 288. The actual, direct use must be exclusive on the part of such an institution as is favored by the constitutional provision."

In the more recent case of Little Theatre of Dallas vs. City of Dallas, 124 S. W. (2d) 863, Judge Looney, in holding that property owned by non-profit "Little Theatre" was not exempt from taxation because it was not used exclusively for school purposes, spoke as follows:

"Unlike the more liberal rule, applied in other states, in construing tax exemption provisions of constitutions and statutes, our courts subject them to a strict construction, holding that, in order to come within the exemption, it must be shown that (in the language of the Constitution and statute) the property is both owned and used exclusively for the purpose for which the exemption is given. In Red v. Johnson, 53 Tex. 284, the Supreme Court held that a school house used and occupied as a boarding school, but in which the owner resided with his family, was not exempt from taxation. In the course of the opinion, Judge Gould said: 'The buildings in question were used by the owner and family not only for school purposes, but also

as a residence. It is not enough that the main use
of the building was as a school, nor that the owner
and family were all engaged in the school as teachers
or pupils. A building used by the owner as a family
residence is not one used exclusively for school pur-
poses, and therefore is not one exempted by the con-
stitution'"

Under the foregoing authorities, we are constrained
to hold that all property of the Westminster Presbyterian En-
campment and the Methodist Kerrville Assembly, hereinabove
specifically mentioned, which is not owned by these respective
encampment associations, and used exclusively by them in con-
ducting their annual encampment and furthering their declared
purposes, would be subject to all ad valorem taxation, includ-
ing taxes levied by Kerrville Independent School District.
The property not receiving the benefit of the tax exemption
afforded by Article 7150, Section 2a, Vernon's Annotated Civil
Statutes, would be the acreage or unimproved lots held either
for sale or lease to the public for building sites, and all
cottages, cabins or buildings rented to the public generally
during such portion of the year as they were not devoted to en-
campment purposes. All other property owned by these two as-
sociations and described in attached correspondence would be
entitled to such tax exemption.

As pointed out in the cases cited and discussed above,
the fact that the rents and revenues from the sale or lease of
this unimproved property and rentals from these cottages, cabins,
and buildings, goes to the support and maintenance of these
respective associations and their beneficent work, does not en-
title them to tax exemption, because said property is not owned
and used exclusively by these associations for the purposes named
in the exemption. This is the requirement of Article 8, Section
2, Constitution of Texas, in regard to these specific associa-
tions; and if the tax exemption statute under consideration here
purports to exempt this particular property from taxation as not
being "leased or otherwise used with a view to profit other than
for the purpose of maintaining the buildings and Association",
then we hold this quoted clause of the statute to be wholly in-
operative and unconstitutional.

The second question presented for our determination is
stated, in attached correspondence, as follows:

"2. There are two title companies within the territorial limits of the Kerrville Independent School District who state that they are not subject to taxation upon the value of their plant but they are willing to assess the physical property such as typewriters, desks, etc. It is my opinion that assembled information upon the cards of these title companies is property and is subject to taxation for the reason that they place a sale value upon the information recorded on their cards."

No discussion of this question is required here because same is specifically answered by our opinion No. O-803, holding such abstract books and abstract plant to be subject to taxation.

Trusting the foregoing fully answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      Pat M. Neff, Jr.
              Assistant

PMN:ew
Knols.

APPROVED APR 15, 1940

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN